MIDDLESEX MUTUAL FIRE INSURANCE COMPANY vs. FIREMAN'S FUND INSURANCE COMPANY & others.

Hampden. September 25, 1957. — November 6, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

Sale, Transfer of title, Contract of sale, Sale of motor vehicle. *Contract*, For sale of motor vehicle, Modification. *Motor Vehicle*, Transfer of title.

Where it appeared that, although a written contract of sale of an automobile by a dealer provided that title should remain in him until the automobile was delivered or fully paid for and the agreed date for delivery and payment of a remaining balance of the purchase price was several days after the execution of the contract, immediately upon its execution the buyer delivered to the dealer another automobile turned in against the price of the automobile purchased and the dealer assisted the buyer in transferring registration in the buyer's name, the registration plates, and a theft insurance policy of the buyer from the turned in automobile to the purchased automobile, conclusions were justified that the parties modified such provision of the written contract as to title and transferred title to the purchased automobile from

---

the dealer to the buyer on the day of the contract, so that title was in the buyer when subsequently, but before the agreed date for delivery and payment of the balance of the price, the purchased automobile was stolen while still in the possession of the dealer.

BILL IN EQUITY, filed in the Superior Court on March 13, 1953, against Fireman's Fund Insurance Company, Kelleher & Mixer, Inc., and Bella Goldman.

The defendant Kelleher & Mixer, Inc., appealed from a final decree entered after hearing by O'Brien, J.

Harry M. Ehrlich, (J. Leo Dowd with him,) for the defendant Kelleher & Mixer, Inc.

Mayo A. Darling, for the plaintiff.

SPALDING, J. This is in essence a bill in equity to determine the liability of two insurance companies with respect to an automobile insurance policy issued by each. Many of the facts were incorporated in a statement of agreed facts which was adopted by the judge in his report of material facts. The evidence is not reported.

On January 3, 1952, Middlesex Mutual Fire Insurance Company (hereinafter called Middlesex) issued an "automobile policy" of insurance to Kelleher & Mixer, Inc. (hereinafter called the corporation), an automobile dealer in Springfield. The policy coverage included indemnity for loss resulting from theft of automobiles owned by the corporation during the period between January 3, 1952, and January 1, 1953.

On October 15, 1952, the corporation entered into a written agreement with one Bella Goldman for the sale of a 1950 Oldsmobile owned by it. Under the agreement Goldman ordered the automobile for delivery on or about October 17, 1952. The purchase price was $1,995 and was to be paid as follows: $10 on the signing of the agreement; a used 1946 Oldsmobile owned by Goldman which was to be delivered to the corporation and for which a credit of $820 on account of the purchase price was to be made; and a balance of $1,165 to be paid on the date of delivery of the 1950 Oldsmobile. Although the date of delivery fixed by the contract was on or about October 17, 1952, it was post-

poned by oral agreement of the parties to October 20, 1952.

On October 15, 1952, when the purchase and sale agreement was executed, Goldman delivered her 1946 Oldsmobile to the corporation. At that time the necessary papers were prepared and executed so that the registration of the 1946 Oldsmobile was transferred to the 1950 Oldsmobile, and the 1950 Oldsmobile was thereby registered in the name of Goldman as owner. The registration plates previously assigned to the 1946 Oldsmobile were attached to the 1950 automobile and the plates previously assigned to the 1950 automobile were attached to the 1946 automobile.

On October 15 Goldman had an insurance policy issued by the Fireman's Fund Insurance Company (hereinafter called Fireman's) covering the 1946 automobile on account of loss or damage by theft. By an indorsement effective October 16, 1952, Fireman's terminated the coverage with respect to the 1946 Oldsmobile and transferred it to the 1950 Oldsmobile. Sometime between October 18 and the early morning of October 20 the 1950 Oldsmobile, then in the possession of the corporation, was stolen; it was later found in a badly damaged condition.

Middlesex denies liability under its policy issued to the corporation by reason of a clause in the policy that it "covers automobiles *owned by the insured and held for sale* . . . but excludes automobiles sold under a conditional sale, mortgage, lease or similar agreement" (emphasis supplied).

Further findings and conclusions we give in the language of the trial judge. "The 1950 Oldsmobile was owned by . . . [the corporation] and was held for sale until October 15, 1952, when the corporation and . . . Goldman entered into the sale agreement. On that date the 1950 Oldsmobile was sold to . . . Goldman. It was no longer 'held for sale.' It was the intention of the parties that the time of the transfer of title was October 15, 1952. The registration of the 1950 Oldsmobile in the name of . . . Goldman as owner, on October 15, 1952, was not only assented to by,

but was made possible through the efforts of the corporation. The transfer of the insurance policy from the 1946 Oldsmobile to the 1950 Oldsmobile was accomplished in part by the corporation. Both of the foregoing facts are consistent with and indicative, as well, of the intention of the corporation to transfer ownership of the 1950 Oldsmobile on October 15, 1952, despite the fact that it would retain possession of . . . [the automobile] until the balance of the purchase price was paid."

The judge ordered that a decree be entered adjudging that at the time the 1950 Oldsmobile was stolen from the corporation's garage it was not covered by the theft policy issued by Middlesex; that Middlesex was not obligated to indemnify either the corporation or Goldman for the theft; and that Fireman's was not obligated to indemnify the corporation for the theft. The order further provided that since no actual controversy existed between Fireman's and Goldman there was no need to make a declaration of rights as between them. From a decree entered in accordance with this order the corporation appealed.

There was no error.

On the basis of the purchase and sale agreement alone, it would be difficult to support the decree below. One of the printed provisions in the agreement reads as follows: "I [Goldman] agree to the following terms: Legal title to the vehicle ordered is to remain in you [the corporation] until delivered — paid for in full. (Strike out one.)" But the agreement could be changed by subsequent agreement, oral or written, or by conduct and course of dealing. *Bartlett* v. *Stanchfield*, 148 Mass. 394, 395. *Trevas & Schack, Inc.* v. *Napel Mills Co.* 241 Mass. 452, 456. And on the facts here the judge was amply warranted in concluding that immediately following the execution of the agreement the conduct of the parties was such as to justify the inference that this provision of the agreement was no longer operative and that it was their intent that title to the 1950 Oldsmobile be transferred forthwith. The corporation, as the trial judge found, not only assented to the registration of the

1950 Oldsmobile in the name of Goldman as owner but assisted her in bringing this about. It also assisted her in having the policy covering the 1946 Oldsmobile transferred to the 1950 automobile.

Despite the clause in the sale agreement that the corporation was to retain title to the automobile until the payment of the purchase price or the delivery of the automobile, the corporation could not transfer the registration before payment or delivery without accepting the legal consequences attaching to such transfer. In short, the corporation, having pursued inconsistent courses, cannot now insist that only one of them is of legal significance. Under G. L. (Ter. Ed.) c. 90, § 2, an automobile must be registered in the name of the owner. True, the statute is satisfied by a proprietary interest less than absolute title. *Fouquette* v. *Millette,* 310 Mass. 351, 353. *Casey* v. *Gallagher,* 326 Mass. 746, 750. But as these cases point out, a change in registration usually indicates a change in title and, at the very least, registration of an automobile in a person's name is some evidence that such person is the owner. Thus the registration of the 1950 Oldsmobile in the name of Goldman as owner, although not conclusive on the issue of title, was evidence bearing on that issue which together with other facts justified the conclusion of the trial judge that the parties intended to transfer title to the automobile on October 15, 1952. Under G. L. (Ter. Ed.) c. 106, § 20 (1), "If the contract is to sell specific or ascertained goods, the property therein passes to the buyer at such time as the parties to the contract intend." The judge could have concluded that the retention of possession of the 1950 Oldsmobile by the corporation was not inconsistent with the transfer of title to Goldman on October 15, 1952, and by agreement of the parties was for the purpose of securing payment of the balance of the purchase price.

> *Decree affirmed with costs of*
> *this appeal.*